**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PRISON LEGAL NEWS<br>PO Box 1151<br>Lake Worth, FL 33460<br><br>　　　　Plaintiff,<br><br>　　　　　　v.<br><br>FEDERAL BUREAU OF PRISONS<br>320 First St., NW<br>Washington, D.C. 20534<br><br>DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001<br><br>　　　　Defendants. | Civil Action No.:  14-683 |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**
**UNDER THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552**

Plaintiff, PRISON LEGAL NEWS ("PLN" or "Plaintiff"), a project of the HUMAN

RIGHTS DEFENSE CENTER, respectfully submits this Complaint for declaratory and

injunctive relief ordering the Federal BUREAU OF PRISONS ("BOP") to turn over any and all

material that PLN requested under the Freedom of Information Act ("FOIA," "the Act"), 5

U.S.C. § 552.

In a July 31, 2012, letter, news media requester Prison Legal News requested copies of

records from the BOP or Federal Prison Industries, also known as UNICOR, relating to

UNICOR's electronics recycling program between January 1, 2010 and July 31, 2012, with a

focus on hazardous or toxic materials and hazardous working conditions, deaths or injuries that

have resulted from same, and related litigation involving UNICOR resulting in verdicts, judgments or settlements, which would necessarily involve the payment of public taxpayer funds. PLN also asked for a waiver of all search, review and duplication fees based on PLN's fee status as a "representative of the news media" and based on the public interest in disclosure. In a December 4, 2012, letter, the BOP assessed $2,744 in improper search and duplication fees, requiring pre-payment prior to searching for or releasing the requested records.

The BOP failed to provide PLN with any information on its right to appeal the determination to the head of the agency, as the Act and regulations require. The BOP failed to provide an appeal deadline or any filing instructions for an administrative appeal. Nevertheless, PLN mailed an administrative appeal to the BOP in February 2013, as well as a letter on March 28, 2013, but has not received any response whatsoever.

The BOP has improperly assessed thousands of dollars in search and duplication fees on PLN, and unlawfully withheld all responsive records. Plaintiff PLN seeks declaratory and injunctive relief ordering release of the records pursuant 5 U.S.C. § 552(a)(4)(B), and reasonable attorney's fees and other litigation costs under 5 U.S.C. § 552(a)(4)(E).

## I.    JURISDICTION

1.      This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) and  28 U.S.C. § 1331 (federal question jurisdiction).

## II.    VENUE

2.      Venue lies properly in this Court pursuant to 28 U.S.C. § 1391(b) and 5 U.S.C. § 552(a)(4)(B) because a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia and the Defendants reside in the same.

### III.   <u>PARTIES</u>

3.      Plaintiff PRISON LEGAL NEWS ("PLN," "Plaintiff") is a project of the HUMAN RIGHTS DEFENSE CENTER ("HRDC"), a non-profit, charitable Washington corporation recognized as tax exempt under IRS Code § 501(c)(3) with principal offices in Lake Worth, FL. The core of HRDC's mission is public education, prisoner education, advocacy, and outreach in support of the rights of prisoners and in furtherance of basic human rights.

4.      The purpose of PLN as stated in PLN's Articles of Incorporation, Article 3, Part 6 is: "to educate prisoners and the public about the destructive nature of racism, sexism, and the economic and social costs of prison to society."

5.      PLN is a legal journal that reports news and litigation concerning detention facilities. PLN publishes and distributes a monthly periodical that covers corrections news and analysis and criminal justice-related issues on a national level. It also publishes certain books about the criminal justice system and legal issues affecting prisoners to prisoners, lawyers, courts, libraries, and other members of the general public throughout the Country and abroad. PLN also maintains a website at www.prisonlegalnews.org and operates an email list serve. Prisoners of all types and their family, friends and advocates are among the intended beneficiaries of PLN's activities.

6.      PLN has published monthly since 1990 and has approximately 9,000 subscribers in all 50 states. Based on reader survey results the estimated actual readership is around ten times that number. PLN's subscribers include lawyers, journalists, judges, courts, public libraries and universities. PLN also maintains a website that receives approximately 100,000 visitors per month based on site analytics.

7.      PLN's staff, articles and advocacy activities, including its litigation, have been

widely cited in mainstream media sources, including Columbia Journalism Review, the

Associated Press, Courthouse News, the First Amendment Center, Sacramento Bee, Wall Street

Journal, Miami Herald, National Law Journal, Huffington Post, USA Today, Atlanta Journal

Constitution, Boston Herald, McClatchy newspapers, Mother Jones, Washington Times, The

Nation, BusinessWeek, CNN and the New York Times, among many others. *See* Ex. 4. In July

2013, the Human Rights Defense Center won the First Amendment Award from the Society of

Professional Journalists for its publication of PLN. *See Human Rights Defense Center Receives*

*SPJ First Amendment Award*, Society of Professional Journalists, July 25, 2013, *available at*

http://www.spj.org.

8.      The information PLN requests in this FOIA request will be used in PLN's news

reporting on UNICOR's electronics recycling programs for the benefit of the public through

PLN's reporting; PLN does not have a commercial interest in such information and will obtain

no commercial benefit therefrom – as such PLN is a non-commercial use requester.

9.      PLN is a "representative of the news media" within the meaning of 5 U.S.C. §

552(a)(4)(A)(ii), in that it gathers information of current interest to the public, uses its editorial

skills to turn the raw materials into a distinct work, and distributes that work to an audience.

10.      Defendant FEDERAL BUREAU OF PRISONS ("BOP") is an agency component

of the Department of Justice, responsible for the administration of the federal prison system, and

subject to the record disclosure obligations under the FOIA, 5 U.S.C. § 552.

11.      The BOP administers Federal Prison Industries, Inc., also known as UNICOR.

*See* 28 C.F.R. § 0.98; UNICOR, http://www.bop.gov/inmates/custody_and_care/unicor.jsp

(listing UNICOR as a BOP program); Federal Prison Industries, Inc. Fiscal Year 2012 Annual

Management Report, p.3, Nov. 15, 2012, *available at* www.unicor.gov (the Director of the BOP is the Chief Executive Officer of Federal Prison Industries, a.k.a. UNICOR, and the Assistant Director of the BOP is the Chief Operating Officer of UNICOR, who oversees its general management).

12.    UNICOR is "a wholly-owned government corporation." *See* 18 U.S.C. § 4121, *et seq.*

13.    Defendant UNITED STATES DEPARTMENT OF JUSTICE ("DOJ") is an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1), and has oversight of the BOP.

14.    Plaintiffs have been forced to incur reasonable attorney's fees and other litigation costs in pursuit of this action, including, but not necessarily limited to, those contemplated by 5 U.S.C. § 552 (a)(4)(E).

## IV.    FACTS

15.    Plaintiff reasserts paragraphs 1-14.

16.    Defendant BUREAU OF PRISONS ("BOP") is the largest prison system in the country with facilities in almost every state and approximately 219,000 inmates.

**The FOIA Request to BOP/UNICOR**

17.    On July 31, 2012, PLN filed a request for records by certified mail, pursuant to FOIA, 5 U.S.C. § 552, on the BOP and/or Federal Prison Industries, Inc., also known as UNICOR. *See* Exhibit 1, FOIA request.

18.    The request was received by the DOJ FOIA/Privacy Act Mail Referral Unit on August 6, 2012. *See id.*

19.     The documents requested relate to UNICOR's electronics recycling program for all locations between January 1, 2010 and July 31, 2012 and include eleven (11) categories of records. The requests include but are not limited to: reports, emails, memos, grievances, letters, testing and investigation results and other records concerning hazardous or toxic materials and hazardous working conditions in UNICOR electronics recycling programs; records related to injuries or deaths resulting from exposure to such materials and conditions; policies, rules, regulations and contracts related to UNICOR's operation of electronics recycling programs; and complaints or claims and verdicts, judgments, settlement agreements and consent decrees in lawsuits or claims against the BOP and/or UNICOR related to hazardous or toxic materials or hazardous working conditions at UNICOR electronics recycling programs.

20.     Specifically, the request sought the following 11 categories of records:

(1)     All reports, emails memos or other records that document the exposure of prisoners, or BOP or UNICOR employees, to hazardous or toxic materials or hazardous working conditions at UNICOR electronics recycling programs, including injuries or deaths resulting from such exposure or conditions, from January 1, 2010 through July 31, 2012.

(2)     All employee grievances, memos, reports, letters, emails or other records that document complaints from BOP or UNICOR employees related to exposure to hazardous or toxic materials or hazardous working conditions at UNICOR electronics recycling programs, including injuries or deaths resulting from such exposure or conditions, from January 2010 through July 31, 2012…

(3)     All grievances, reports, letters, emails or other records that document complaints from inmates related to exposure to hazardous or toxic materials or hazardous working conditions at UNICOR electronics recycling programs, including injuries or deaths resulting from such exposure or conditions, from January 1, 2010 through July 31, 2012…

(4)     All BOP and/or UNICOR policies, rules and regulations concerning monitoring and reporting requirements related to hazardous or toxic materials, exposures to hazardous or toxic materials, and hazardous working conditions at UNICOR electronics recycling programs.

(5)     All BOP and/or UNICOR hazardous or toxic materials monitoring reports and testing results related to UNICOR electronics recycling programs, generated from January 1, 2010 through July 31, 2012.

(6)     All grievances, letters, memos, emails or other records received from the union(s) that represent BOP and/or UNICOR employees, related to employee exposure to hazardous or toxic materials or hazardous working conditions at UNICOR electronics recycling programs, including injuries or deaths resulting from such exposure or conditions, from January 1, 2010 through July 31, 2012.

(7)     The results of all BOP and/or UNICOR investigations into allegations of exposure to hazardous or toxic materials at UNICOR electronics recycling programs, from January 1m 2010 through July 31, 2012. This includes the results of investigations into allegations of sickness or injuries or deaths related to exposure to hazardous or toxic materials at UNICOR electronics recycling programs involving both inmates and employees.

(8)     All BOP and/or UNICOR policies, rules and regulations concerning the business operations of UNICOR electronics recycling programs, including where all said programs are located, where said programs obtain ewaste and other items for recycling purposes, the number of inmates assigned to each program, and job duties/descriptions for such inmate workers.

(9)     All contracts or subcontracts between the BOP and/or UNICOR and private (non-governmental) businesses, entities and individuals, where said contracts or subcontracts are related to UNICOR electronics recycling programs. This request encompasses all such contracts and subcontracts at all UNICOR electronics recycling program locations.

(10)     All verdict forms, final judgments, settlement agreements, claim payment forms and consent decrees in lawsuits or claims brought against the BOP and/or UNICOR that alleged, in whole or in part, exposure to hazardous or toxic materials or hazardous working conditions at UNICOR electronics recycling programs, where such lawsuits or claims resulted in monetary payment to a plaintiff or claimant, from January 1, 2010 through July 31, 2012.

(11)     The claim, complaint or last amended complaint (if applicable) in each lawsuit or claim in request No. 10 that results in the disclosure of any records pursuant to request no. 10.

*See* Ex. 1.

21.     PLN sought the release of all records in electronic format where available. *See* Ex. 1.

22.    PLN represented to the BOP that it intends to publish an in-depth examination of UNICOR electronics recycling programs, with a focus on hazardous or toxic materials and hazardous working conditions, deaths or injuries that have resulted from same, and related litigation involving UNICOR resulting in verdicts, judgments or settlements, which would necessarily involve the payment of public taxpayer funds. *See* Ex. 4 (PLN's Administrative Appeal) at 2.

23.    PLN has published several articles on this topic, *see, e.g.,* Ex. 1, but PLN has not been able to write an in-depth story regarding UNICOR's activities during the relevant period of January 2010 through July 2012, due to a lack of internal documents, reports, memos, emails, letters and other records related to hazardous or toxic materials or working conditions in UNICOR electronics recycling programs.

24.    The release of requested records would allow PLN to publish an article that will contribute significantly to the public's understanding of how the UNICOR electronics recycling programs operate; the extent to which prisoners and BOP/UNICOR employees were exposed to hazardous or toxic materials or working conditions; the extent to which BOP/UNICOR officials were aware of such hazardous or toxic materials or working conditions; whether the BOP/UNICOR violated workplace safety standards; whether the BOP/UNICOR violated its own policies, rules or regulations related to the electronics recycling programs; whether injuries or deaths resulted from hazardous or toxic materials or working conditions; whether UNICOR was found liable in cases alleging hazardous or toxic materials or hazardous working conditions in electronics recycling programs; and whether UNICOR paid verdicts, judgments or settlements in cases alleging hazardous or toxic materials or hazardous working conditions in such programs, which would involve the payment of public taxpayer funds. *See* Exs. 1, 4.

25.     PLN represented that it has the ability to disseminate information to the general public at large, which will contribute to the public's understanding of UNICOR recycling programs, both through its print publication and also via its website (www.prisonlegalnews.org). *See* Exs. 1, 4.

26.     PLN requested a fee waiver based on its representative of the news media status, its non-commercial use requester status, and the public interest in the records. PLN sought a waiver of any and all search, review and duplication fees, explaining that "PLN is a media publication and the requested records will be used for the benefit of the public through our non-commercial news reporting, and will contribute significantly to public understanding of government operations and activities at UNICOR." *See* Ex. 1.

27.     PLN attached to the FOIA request various articles from its publication regarding hazards of the UNICOR recycling program and misconduct within the BOP. *See, e.g.,* Ex. 1 including, Aaron Shuman, *"To Get Stuff and Sell It for As Much As We Can Get:" Federal Prison Industries and Electronics Recycling*, 18 PLN 1 (March 2007); Brandon Sample, *Prisoners Exposed to Toxic Dust at UNICOR Recycling Factories*, 20 PLN 1 (Jan. 2009).

28.     PLN cited a recent decision of the United States District Court for the District of Columbia, *Prison Legal News v. Lappin*, 436 F.Supp.2d 17 (D.D.C. 2006), holding that PLN was entitled to a fee waiver in connection with a FOIA request submitted to the Bureau of Prisons. A copy of this decision was attached to the FOIA request. *See* Ex. 1. The Court found that PLN had "the intent and ability to disseminate the requested records to the general public" based on an analysis of its publication and readership. *Lappin*, 436 F.Supp.2d at 26-27 ("With a represented readership of 'thousands each month,' PLN can 'widely disseminate' the requested information to the 'relevant public.'").

**DOJ's Acknowledgement and Referral of the Request to the BOP**

29.     By letter dated August 21, 2012, the DOJ confirmed receipt of the records

request. *See* Ex. 2, August 21, 2012, acknowledgement letter from the DOJ.

30.     The DOJ referred the records request to the FOIA/Privacy Act office of the

Federal Bureau of Prisons for processing. *See id.*

**The BOP's December 4, 2012, Fee Waiver Denial Letter and Assessment of Fees**

31.     On December 4, 2012, approximately four months after PLN filed the records

request the BOP sent PLN a letter requiring the pre-payment of $2,744 before searching for and

reviewing any responsive records. *See* Ex. 3, Denial Letter.

32.     The BOP stated that "the records … are being maintained at eight (8) Bureau of

Prisons facilities[,]" and consist of no less than 14,000 pages. *See id.*

33.     The BOP assessed $1,344.00 in search fees and $1,400 for duplication of records.

*See id.*

34.     The BOP decided to withhold all responsive records, unless PLN paid such search

and duplication fees within 30 days, at which point the BOP would "begin the search and

retrieval of these records." *See id.*

35.     The BOP did not address and therefore conceded PLN's "representative of the

news media" status.

36.     The BOP did not address PLN's request that the records be released in electronic

format, despite assessing "duplication" fees. *See id.*

**The BOP's Improper Assessment of Search Fees on PLN – a Representative of the News Media**

37.     As stated above, PLN is a representative of the news media under the FOIA. It

gathers information of current interest to a segment of the public, uses its editorial skills to turn

raw materials into a distinct work, and distributes that work to an audience. *See* 5 U.S.C.

§ 552(a)(4)(A)(ii) ("Examples of news-media entities are … publishers of periodicals

[disseminators of 'news'] … who make their products available for purchase by or subscription

by or free distribution to the general public.").

38.     The BOP's December 4, 2012, letter wholly failed to address PLN's

"representative of the news media" status. *See* Ex. 3. As such, it was conceded.

39.     The BOP is barred from assessing search fees on news media requesters. 5 U.S.C.

§ 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document

duplication when records are not sought for commercial use and the request is made by … a

representative of the news media."); 28 C.F.R. §§ 16.11(c), (d), 513.67.

40.     The BOP failed to state any reason for denying PLN representative of the news

media status, which would have been required for any adverse fee-related determination. *See* 5

U.S.C. § 552(a)(6)(A)(i); 28 C.F.R. §§ 16.6(c)(2), 513.66.

41.     Nevertheless, the BOP assessed search fees for this request. *See* Ex. 3.

42.     The BOP failed to inform PLN that it could challenge this determination by

appealing to the head of the Agency. *See* Ex. 3.

43.     The BOP failed to inform PLN of any deadline for filing an administrative appeal.

*See* Ex. 3.

44.     The BOP failed to inform PLN of any filing address or filing instructions for an

administrative appeal. *See id.*

**The BOP's Denial of a Public Interest Fee Waiver**

45.      The BOP denied PLN's request for a public interest fee waiver, stating that the

request did not show that release of the information "is in the public interest because it is likely

to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *See id.*

46. The public interest fee waiver denial was improper, bare and conclusory.

47. The BOP failed to provide any information to PLN on how to appeal the denial to the head of the Agency.

48. The BOP failed to provide any appeal filing instructions whatsoever, including failing to provide any deadline for appealing the denial.

49. The BOP failed to consider any of the evidence and explanation that PLN submitted in support of its fee waiver request, stating that the BOP found "no evidence that releasing the information to you will contribute significantly to the public's understanding of how the Bureau of Prisons UNICOR division conducted its electronics recycling program." *See id.*

50. The BOP referenced six factors for adjudication of public interest fee waiver requests. 28 C.F.R. § 16.11(k)(2). These factors are (1) whether the subject of the requested records concerns "the operations or activities of the government;" (2) whether the disclosure is "likely to contribute" to an understanding of government operations or activities; (3) whether disclosure of the requested information will contribute to the understanding of the general public at large; (4) whether the disclosure is likely to contribute "significantly" to public understanding of government operations and activities; (5) whether the requester has a commercial interest that would be furthered by the requested disclosure; (6) whether any such commercial interest outweighs the public interest in disclosure. *See id.*

51. Without analyzing PLN's request or applying all factors to the subject of the request, the BOP denied the requested fee waiver.

52.     The BOP did not dispute and therefore conceded that the request concerned the operations or activities of the government. *See id.*

53.     As stated above, the BOP did not dispute and therefore conceded that PLN is a "media publication," and as such, disclosure will contribute to the "public understanding" of UNICOR's recycling program, and that the information will be broadly disseminated to the general public. *See id.*; 5 U.S.C. § 552(a)(4)(A)(ii)(II). *See also* 28 C.F.R. 16.11(k)(2) (stating that representatives of the news media are presumed to satisfy the factor requiring that the disclosure contribute to "public understanding").

54.     The BOP did not dispute and therefore conceded that the release of the records would not be primarily in the commercial interest of PLN, and that PLN is a non-commercial use requester. *See id.*

55.     The BOP conceded that "there may be some public and media interest in the information requested." *See id.*

56.     The BOP stated it was denying the public interest fee waiver request based on only one ostensible basis: "Information regarding this subject matter is in the public domain; therefore, any additional releasing of this information will not significantly inform the public about this subject matter in any greater detail." *See id.*

57.     This assertion is incorrect, bare and conclusory. The BOP failed to identify any responsive information in the public domain regarding the subject of the request during the relevant timeframe of January 1, 2010 through July 31, 2012. *See id.*

58.     To Plaintiff's knowledge, the detailed information requested in its FOIA request is not readily available to the public and has not been published or disseminated to the public by the news media. Thus, PLN's reporting on this issue would significantly contribute to the

public's understanding of how the UNICOR electronics recycling programs operate with respect to hazardous materials and working conditions during the timeframe covered by the request.

59.     As presented in PLN's administrative appeal, Ex. 4, many of the records requested in PLN's FOIA request, including internal UNICOR emails, memos, letters, reports, employee grievances, testing results, etc. are not in the public domain nor are they readily available to the public. *See* Ex. 4 at 4. Nor is information related to injuries or deaths resulting from hazardous or toxic materials or hazardous working conditions at UNICOR electronics recycling programs readily available for public inspection. *See id.* Similarly, settlements of lawsuits and other claims involving exposure to hazardous or toxic materials or hazardous working conditions at UNICOR electronics recycling programs, where the specific terms of the settlements were not entered on the court docket, would not be readily available to the general public. *See id.*

60.     As presented in PLN's administrative appeal, Ex. 4, with respect to the complaints, verdicts, judgments, settlements, etc. in cases involving exposure to hazardous or toxic materials or hazardous working conditions at UNICOR electronics recycling programs, any relevant documents available to the public in court records would be dispersed among courts in a number of different jurisdictions (because the UNICOR recycling programs operate in different states), and may name UNICOR employees as defendants rather than UNICOR itself. Thus, it would be very difficult, if not impossible, for the public to locate such records. *See* Ex. 4 at 4 – 5; *Id.* (quoting *Prison Legal News v. Lappin*, 436 F.Supp.2d at 24) ("[I]n many cases covered by the PLN requests, the BOP may not be a named party, which would complicate significantly the public's ability to discover those particular cases.").

61.     By obtaining the requested records, PLN would be able to present such information to the general public in a single published article, thereby significantly contributing to the public's understanding of how the UNICOR electronics recycling programs operate with respect to hazardous or toxic materials or hazardous working conditions. *See id* at 5 ("There is a significant difference between locating the requested information in courthouses around the country and on the internet, as opposed to having access to the information in a single document. Publication of the requested information by PLN will therefore contribute far more to public understanding than if the information remains available only in its current status.") (citations omitted).

62.     Further, as PLN submitted, the responsive records would contribute significantly to the public's understanding of the efficacy of the UNICOR electronics recycling programs. *See* Ex. 4.

63.     The volume of responsive records identified by the BOP, no less than 14,000 pages, would necessarily contain a large amount of previously unreleased information that would contribute significantly to the public's understanding of UNICOR's electronics recycling programs; specifically, whether such programs had hazardous or toxic materials or working conditions that resulted in injuries or deaths among prisoners and employees. *See* Ex. 4 at 4.

64.     Additionally, by aggregating the requested records from numerous BOP facilities, analyzing them, and publishing the analysis in one or more articles concerning UNICOR's electronics recycling program that are then disseminated to the general public, PLN would significantly contribute to the public's understanding of how the UNICOR electronics recycling programs operate with respect to hazardous or toxic materials or hazardous working conditions. *Id.* at 5.

**The BOP's Failure to Provide Notice of Appeal Rights**

65.     As stated above, the BOP failed to include any information in its December 4, 2012, denial letter on PLN's right to appeal the adverse determinations to the head of the Agency, when such an appeal would be due, or where to file such an appeal. *See* Ex. 3.

66.     The BOP's December 4, 2012, letter does not meet the FOIA's requirements for an "adverse determination" of the fee-related requests, since it did not provide any information on PLN's right of appeal to the head of the Agency. *See* Ex. 3; 5 U.S.C. § 552(a)(6)(A)(i); 28 C.F.R. §§ 16.6 (c)(4), 513.66.

67.     Since the December 4, 2012, correspondence was not an "adverse determination" for purposes of section 552(a)(6)(A) of the FOIA, it did not trigger any administrative exhaustion requirement. *See Oglesby v. Dept. of the Army*, 920 F.2d 57, 65 (D.C. Cir. 1990).

**PLN's Administrative Appeal and Subsequent Inquiry**

68.     On February 1, 2013, PLN nevertheless sent an administrative appeal by certified mail to the BOP. In its appeal PLN responded to each ostensible basis cited by BOP in its denial, and provided additional information in support of its request. *See* Ex. 4.

69.     The Department of Justice and the Bureau of Prisons failed to respond to or even acknowledge the February 1, 2013, administrative appeal to date.

70.     On March 28, 2013, PLN sent an inquiry regarding the administrative appeal to the BOP. *See* Ex. 5.

71.      The inquiry letter again challenged the BOP's failure to classify PLN as a representative of the news media for fee purposes, and its refusal to grant a public interest fee waiver. *See id.* The letter explained that the BOP's December 4, 2012, correspondence failed to meet the Act's requirements for an "adverse determination." *See id.* It also explained that the

BOP had failed to determine the administrative appeal and the request within the statutory time limits, thereby triggering the Act's fee penalty provision. *See id.*; 5 U.S.C. § 552(a)(4)(A)(viii). Finally, PLN requested "a prompt response, on or before April 10, 2013." *See* Ex. 5.

72.     To date, neither the DOJ nor the BOP has issued any correspondence or communication regarding its processing of PLN's administrative appeal.

73.     To date, neither the DOJ nor the BOP has released any records responsive to this request.

**The BOP/UNICOR's Triggering of the Fee Penalty Under 5 U.S.C. § 552(a)(4)(A)(viii) for Failure to Issue a Timely Final Determination of the Request**

74.     The FOIA requires an Agency receiving a request for records to "determine within 20 days (excepting Saturdays, Sundays and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination …" 5 U.S.C. § 552(a)(6)(A)(i).

75.     This 20 business-day period "shall commence on the date on which the request is first received by the appropriate component of the agency, but in any event not later than ten days after the request is first received by any component of the agency that is designated in the agency's regulations under this section to receive requests under this section." 5 U.S.C. § 552(a)(6)(A).

76.     The DOJ Mail Referral Unit is designated by Agency regulations to receive records requests under the FOIA. 28 C.F.R. § 16.3(a).

77.     The 20 business-day final determination period commenced by August 16, 2012 – 10 days after the request was received by the DOJ Mail Referral Unit.

78.     The BOP was obligated to issue its final determination of PLN's records request, including any fee determination, no later than Friday September 14, 2012, 20 business days after August 16, 2012.

79.     By September 14, 2012, the BOP had not made such a final determination, nor provided notice of any determination to PLN. Moreover, no exceptional or unusual circumstances exist or have been asserted by the Agency.

**The BOP is Barred From Assessing Search or Duplication Fees Due it Its Failure to Comply with the FOIA's Time Limits**

80.     The FOIA provides that, absent exceptional circumstances neither claimed nor present herein, an agency is precluded from assessing search fees, or duplication fees for a news media requester, if the agency has failed to comply with any time limit set forth under 5 U.S.C. § 552(a)(6). *See* 5 U.S.C. § 552(a)(4)(A)(viii).

81.     As explained above, the DOJ and the BOP violated the time limits of section 552(a)(6)(A)(i) in failing to issue any final determination of the request within the required time period, including any determination of the fee waiver request that meets the requirements of the FOIA.

82.     Moreover, the BOP violated the time limit of section 552(a)(6)(A)(ii) in failing to make a determination of the administrative appeal within 20 business days.

83.     The BOP is barred from assessing review, search or duplication fees for this request, given PLN's representative of the news media status. *See* 5 U.S.C. § 552(a)(4)(A)(viii).

84.     The BOP has unlawfully assessed fees against PLN in the amount of $2,744.00 and withheld all responsive records.

85.     These fees include duplication fees, despite PLN's request that the records be released in electronic format where available.

**PLN's Statutory Exhaustion of Administrative Remedies**

86.     The Act states, "Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be *deemed to have exhausted his administrative remedies* with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph." 5 U.S.C. § 552(a)(6)(C)(i) (emphasis added).

87.     The BOP has failed to issue any final determination of the request, containing the required information on PLN's right to appeal to the head of the Agency. *See* Ex. 3. The BOP has also failed to release the responsive records within the Act's time limits. *See* 5 U.S.C. § 552(a)(6)(A)(i).

88.     PLN mailed an administrative appeal to the BOP, appealing its improper imposition of fees and withholding of records. *See* Ex. 4. The BOP has not determined this appeal or provided PLN with notice of any steps that it has taken to resolve the appeal. The BOP failed to respond to PLN's status inquiry letter dated March 28, 2013.

89.     The Act requires that an Agency determine any administrative appeal within 20 business days. *See* 5 U.S.C. § 552(a)(6)(A)(ii).

90.     PLN has exhausted all administrative remedies.

## V.     CAUSE OF ACTION
### (Freedom of Information Act)

**WRONGFUL WITHHOLDING OF AGENCY RECORDS**
**FAILURE TO DETERMINE REPRESENTATIVE OF THE NEWS MEDIA STATUS**
**WRONGFUL DENIAL OF PUBLIC INTEREST FEE WAIVER REQUEST**
**UNLAWFUL IMPOSITION OF SEARCH AND DUPLICATION FEES**

91.     Plaintiff reasserts paragraphs 1-90.

92.     The BOP has unlawfully imposed $2,744.00 in fees on PLN - $1,344.00 in improper search fees and $1,400.00 in improper duplication fees.

93.     The BOP has failed to grant PLN's status as a "representative of the news media" under section 552(a)(4)(A) of the FOIA.

94.     The BOP has unlawfully denied PLN's request for a waiver of fees in the public interest pursuant to section 552(a)(4)(A)(iii).

95.     The BOP has unlawfully withheld all responsive records subject release under sections 552(a)(2) and (a)(3) of the Act.

96.     PLN is entitled to declaratory relief as to its representative of the news media status, its entitlement to a public interest fee waiver, and the BOP's triggering of the FOIA fee penalty provision, 5 U.S.C. § 552(a)(4)(A)(viii).

97.     PLN is entitled to declaratory relief as to (i) responsive final opinions, including investigation reports, subject to mandatory disclosure under section 552(a)(2)(A) of the FOIA, without the requiring the formality of a written request; (ii) Responsive policies, rules, regulations and instructions to staff subject to mandatory disclosure under sections 552(a)(2)(B) and (C) of the FOIA, without requiring the formality of a written request.

98.     PLN is entitled to injunctive relief ordering the search for and release of all responsive records by a date certain, without its having to pay search or duplication fees.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant it the following relief:

A.     Declare that responsive final opinions, including investigation reports, policies, rules, regulations and instructions to staff, are subject to mandatory disclosure under section 552(a)(2) of the FOIA;

B.     Declare that Plaintiff PLN is a representative of the news media;

C.      Declare that Defendant BOP's denial of the public interest fee waiver request was unlawful;

D.      Declare that Defendant BOP triggered the fee penalty provision of section 552(a)(4)(A)(viii) of the FOIA;

E.      Order Defendant BOP to release the requested documents within 30 days, without imposing search or duplication fees;

F.      Award Plaintiff PLN reasonable attorney's fees and litigation costs incurred in this case under 5 U.S.C. § 552(a)(4)(E);

G.      Grant such further relief as the Court may deem to be just and appropriate.


April 23, 2014                          Respectfully submitted,


                                           /S/ Carl Messineo                                    
                                        Carl Messineo (Bar # 450033)
                                        cm@justiceonline.org
                                        PARTNERSHIP FOR CIVIL JUSTICE FUND
                                        617 Florida Ave. NW
                                        Washington, D.C. 20001
                                        (202) 232-1180 x201 (t); (202) 747-7747 (fax)


                                           /S/ Mara Verheyden-Hilliard                    
                                        Mara Verheyden-Hilliard (Bar # 450031)
                                        mvh@justiceonline.org
                                        PARTNERSHIP FOR CIVIL JUSTICE FUND
                                        617 Florida Ave. NW
                                        Washington, D.C. 20001
                                        (202) 232-1180 x201 (t); (202) 747-7747 (fax)